**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


DARREN E. RICHARDSON,          :
                               :    Civil Action No. 06-2340 (DMC)
          Plaintiff,           :
                               :
     v.                        :    OPINION
                               :
MORRIS COUNTY CORRECTIONAL     :
FACILITY, et al.,              :
                               :
          Defendants.          :
```

**APPEARANCES:**

Plaintiff pro se
Darren E. Richardson
Passaic County Jail
11 Marshall Street
Paterson, NJ 07505

**CAVANAUGH**, District Judge

Plaintiff Darren E. Richardson, a state pre-trial detainee previously detained at Morris County Correctional Facility ("MCCF") in Morristown, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.  BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that he was a state pre-trial detainee confined at MCCF when the alleged civil rights violations occurred.[1]  He brings this action against the following defendants: MCCF, Sheriff Edward V. Rochford, Chief Ralph McGrane, Warden Frank Corrente, Captain Collins, Captain Deemer, the Social Service Unit, and John Doe correctional officers at MCCF.

Plaintiff first alleges that he was subjected to daily strip searches while he was confined in pre-hearing detention or disciplinary detention from January 12 through 21, 2006.  He claims that these strip searches were conducted to humiliate.  Plaintiff asserts that there was no reason, justification, or probable cause for the daily strip searches because prisoners in

---

[1] As a pre-trial detainee, Petitioner is protected by the Due Process Clause of the Fourteenth Amendment.  See Hubbard v. Taylor, 399 F.3d 150  (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000).  Analysis of whether such a detainee or unsentenced prisoner has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).  Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

pre-hearing detention or disciplinary detention do not leave their cells, as evidenced by the facts that such prisoners do not receive any recreational time and are served meals through a slot in the door.

Next, Plaintiff alleges that he was denied access to legal telephone calls during the two-week period immediately following his arrest, and that he was denied access to writing materials during that same period, which prevented him from contacting the court or his public defender with regard to an unrelated criminal matter.  As a result, he failed to appear for the arraignment in that unrelated matter and his bail was revoked and forfeited.  Subsequent requests for legal telephone calls also were refused.  The Inmate Manual states that legal telephone calls are made through the Social Services Unit, but when he submitted request forms they were denied.

Plaintiff also complains that incoming and outgoing legal mail is delayed for about four to five days.

Plaintiff further states that inmates' legal mail is searched outside of the inmates' presence.  A new jail policy allows legal mail to be searched for contraband in the same manner as general correspondence.

Plaintiff also asserts that vegetarian meal trays are nutritionally insufficient.

3

Finally, Plaintiff complains that detainees are provided with old and dirty footwear and that mattresses are not sterilized or cleaned upon re-issue.

Plaintiff seeks injunctive relief and compensatory and punitive damages.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

5

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, the claims asserted against MCCF and the Social Service Unit are subject to dismissal because jail facilities are not "persons" for purposes of § 1983 liability. See Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J. 1989); Mitchell v. Chester County Farms Prison, 426 F.Supp. 271, 274 (E.D. Pa. 1976). Accordingly, the Complaint will be dismissed in its entirety as against MCCF and the Social Service Unit.

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-

91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."  Monell, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

Here, Plaintiff asserts claims against supervisory officials, including Sheriff Rochford, Chief McGrane, and Warden Corrente. He alleges that these defendants operated facilitated, maintained, and/or allowed the MCCF staff to engage in unconstitutional behavior against Plaintiff. While these allegations are very general, it does appear that Plaintiff is alleging that these defendants were aware of the unconstitutional conduct and that the conduct may have been policy and practice at MCCF. Assuming the allegations are true at this early stage, the Court will allow the Complaint to proceed against these defendants as it is not based solely on a theory of respondeat superior.

## IV.  ANALYSIS

### A.  Strip Searches

In Bell v. Wolfish, 441 U.S. 520 (1979), the Supreme Court held that invasive body searches of pretrial detainees do not violate the Fourth Amendment as long as the searches are related to a legitimate goal or interest. 441 U.S. at 538. See also Newkirk v. Sheers, 834 F.Supp. 772, 787 (E.D. Pa. 1993). The balancing test requires that courts weigh the need for the particular strip search against the invasion of personal rights that the search entails. Bell, 441 U.S. at 539. Important factors for the court to consider include the level of intrusion, the manner in which the search was conducted, the justification

for the search, and the place where the search was performed. Id.  Moreover, blanket strip searches, without a reasonable and particularized suspicion, violate a pretrial detainee's due process rights under the Fourteenth Amendment.  Id.  Searaches must be conducted in a professional and reasonable manner.  Id. at 560.

Here, Plaintiff is not complaining about routine shakedowns or cell searches, which generally are permissible given the legitimate interest in maintaining security in a corrections facility.  Rather, Plaintiff alleges that he was subjected to daily strip searches of his body, in a humiliating and abusive manner, for no legitimate purpose.  Plaintiff argues that there was no probable cause or justification for the daily strip searches because inmates in pre-hearing or disciplinary detention are not allowed to leave their cells.  Thus, he would not have had the opportunity or access to obtain and hide contraband to justify a strip search.

Based on these allegations, if true, the Court finds that Plaintiff may be able to establish that the strip searches to which he was subjected were unreasonable.  Therefore, this claim will be permitted to proceed past this preliminary screening stage.

9

B.   <u>Access to Courts and to Counsel</u>

Inmates must be afforded reasonable access to telephones so as not to infringe the First Amendment or impede meaningful access to the courts in violation of the Fourteenth Amendment. See <u>Inmates of Allegheny County Jail v. Wecht</u>, 565 F.Supp. 1278, 1284 (E.D. Pa. 1983); <u>Owens-El v. Robinson</u>, 442 F.Supp. 1368, 1386 (W.D. Pa. 1978), <u>aff'd in part and vacated in part on other grounds sub nom.</u>, <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754 (3d Cir. 1979). Nonetheless, inmates' rights to communicate, even with legal counsel, are not unlimited. <u>Aswegan v. Henry</u>, 981 F.2d 313 (8th Cir. 1992). Prison officials can limit communications, particularly telephone communications, to ensure safety, security, and the orderly operations of their institution. <u>Griffin-El v. MCI Telecommunications Corp.</u>, 835 F.Supp. 1114, 1122-23 (E.D. Mo. 1993), <u>aff'd</u>, 43 F.3d 1476 (8th Cir. 1994). In particular, courts have approved the installation of collect-only telephone systems and, for non-legal calls, some degree of monitoring to control instances of inmate telephone fraud, harassment of crime victims, or disputes among inmates over telephone use. <u>See</u>, <u>e.g.</u>, <u>Wooden v. Norris</u>, 637 F.Supp. 543 (M.D. Tenn. 1986) (installation of coinless telephones justified given evidence that prior coin-operated system led to fraudulent billing, vandalism, inmate calls to victims of their crimes, and

illicit trade).  See also Newkirk v. Sheers, 834 F.Supp. 772, 792 (E.D. Pa. 1993).

Numerous and sometimes stringent restrictions on personal telephone calls by inmates have been upheld as constitutional. Most of these restrictions involve limits on the numbers of calls permitted per week, limits on what persons can be called, and time limits on individual calls.  But see Johnson v. Galli, 596 F.Supp. 135 (D. Nev. 1984) (limitation to one call per week, including both personal and legal uses of telephone, unreasonable and in violation of First Amendment).  Detainees may be limited to one monitored personal telephone call every other day.  Martin v. Tyson, 845 F.2d 1451 (7th Cir.), cert. denied, 488 U.S. 863 (1988).

Were Plaintiff's only claim one of denial of telephone access, this Court would find that the Complaint failed to state a claim, as Plaintiff has not alleged denial of access, but rather that the Public Defender's office refused to accept collect calls placed from the telephone system provided by the jail.  Here, however, Plaintiff alleged further that he advised the appropriate jail personnel that he had an arraignment scheduled in another matter two weeks after his arrest, and that he also had no writing materials to contact his counsel or the court.  These additional allegations suggest a claim of denial of

11

access to the courts and interference with the Sixth Amendment right to counsel.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and

in order to challenge the conditions of their confinement. Impairment of any <u>other</u> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis in original).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury." <u>See</u> <u>Lewis</u>, 518 U.S. at 348-55 and n.3 (1996); <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997). There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.  ...  [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim.  He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." <u>Lewis</u>, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. ... This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying. [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

Moreover, in connection with a pending criminal matter, an accused has the right under the Sixth Amendment to the assistance of counsel.

Here, Plaintiff has alleged that the combination of denial of telephone and of written communication with his counsel and with the court caused his bail to be revoked and forfeited. Plaintiff has alleged actual injury sufficient to allow his claims for interference with his right of access to the courts and to counsel to proceed beyond the screening stage.

C.   Interference with the Mail

The assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen states a First Amendment claim.  See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304 (7th Cir. 1993).  The Court of Appeals for the Third Circuit has held that "a pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech.  Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995) (applying the "reasonableness" analysis of Turner v. Safley, 482 U.S. 78, 89 (1987)), implied overruling on other grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

Allegations of inspection or interference with an inmate's legal mail also may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case.  See Wolff v. McDonnell, 418 U.S. 539, 575 (1974) (upholding regulation permitting legal mail to be opened and inspected for contraband, but not read, in the presence of the inmate).  Cf. Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987) (prison employees may open official mail sent by a court clerk to an

15

inmate without infringing on inmate's privacy rights).  However, an isolated incident of opening a prisoner's legal mail, without evidence of improper motive or resulting interference with an inmate's right to counsel or access to the courts, does not give rise to a constitutional claim.  See Gardner v. Howard, 109 F.3d 427, 430-31 (8th Cir. 1997) and cases cited therein.

Here, Plaintiff's allegation that prison officials have a pattern and practice of opening legal mail outside his presence will be permitted to proceed.

Delay of legal mail for four or five days on weekends or holiday weeks[2] is not such an inordinate delay as to be a constitutional violation.  This claim will be dismissed for failure to state a claim.

D.   Conditions of Confinement

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Pre-trial detainees and convicted but unsentenced prisoners retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.  See Hubbard v. Taylor, 399

---

[2] Plaintiff alleges that his mail was delayed during the weeks of Christmas and Good Friday.

F.3d 150 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000). Analysis of whether such a detainee or unsentenced prisoner has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979). Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not

>    constitutionally be inflicted upon detainees qua
>    detainees. ...

441 U.S. at 535-39 (citations omitted). The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." 441 U.S. at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. 441 U.S. at 539 n.20. Nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n.20, 561-62.

The allegations that jail personnel issued to Plaintiff used and dirty footwear and an unsterilized mattress, especially without any allegation of harm flowing from these items, fails to state a claim of unconstitutional conditions of confinement. The allegation of an inadequate diet, however, will be permitted to proceed.

## V. CONCLUSION

For the reasons set forth above, the Complaint will be dismissed with prejudice as against defendants MCCF and the Social Service Unit. As to the remaining defendants, the claims of delay in processing of legal mail and of unconstitutional

conditions of confinement arising out of the issuance of used footwear and mattresses will be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim.  All other claims will be permitted to proceed.  An appropriate order follows.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh
United States District Judge

Dated: 10/19/06